March 5, 2026

**VIA ECF**

Honorable Ona T. Wang
United States District Court
500 Pearl Street
New York, NY 10007

Re:  *In re OpenAI, Inc., Copyright Infringement Litig.*, 1:25-md-3143-SHS-OTW
     This Document Relates To: All Actions. Microsoft's Response to ECF 1383.

Dear Judge Wang:

Microsoft agrees with Plaintiffs that there is no need to extend the fact discovery deadline beyond February 27, 2026. But Plaintiffs are incorrect that their remaining demands "will not require [Microsoft] to undertake substantial additional work" or that this discovery is "necessary." ECF 1383 at 1. Plaintiffs' further requests are duplicative, unduly burdensome and unnecessary in light of the extensive discovery from Microsoft to date. The Court should deny Plaintiffs' requests.

**Output Log Print Protocol (§ I.b.):** Plaintiffs ask the Court to adopt their current proposed print protocol and order Defendants to continue making the data logs available to Plaintiffs through the end of trial. Both requests should be denied. The Court should order the parties to continue meeting and conferring, and by March 20, either file a stipulated joint print protocol or file a 2-page letter brief attaching their respective proposed protocols from which the Court may choose. The parties were in the middle of a productive meet and confer and had been exchanging edits to proposed drafts when Plaintiffs suddenly included this request in their motion. The Parties may reach agreement if allowed sufficient time to finish conferring. For instance, Microsoft is willing to produce electronic log excerpts in lieu of hard copies.

Regarding Plaintiffs' requested caps on print requests, the 1,000 total log cap is a presumptive cap which the Parties are still negotiating. Microsoft's greater concern is the lack of any per-print request cap in Plaintiffs' proposal. Some cap is needed because Plaintiffs' proposal requires Microsoft to review the requested logs, make any needed changes to PII redactions, assemble the logs in a readable format, and produce them to Plaintiffs in four business days. Many of these logs are massive documents that are not in a readily printable format. The four-business day turn-around would be impossible if Plaintiffs make a request to print thousands or millions of logs. Further, the Parties still need to confer on the format of and what fields should be included in the printed logs so that they are readable and useable as exhibits.

Plaintiffs' request that the data logs be fully accessible to them through trial should be denied for two reasons: (1) data privacy and (2) burden. Microsoft created three virtual machines ("VMs") that allow multiple users to simultaneously access the data logs, loaded the VMs with every program Plaintiffs requested, and created shared folders so that Plaintiffs working on different VMs can share information with each other and work together. It is hardly the restrictive sandbox Plaintiffs claim. The millions of logs Microsoft uploaded to the VMs contain highly sensitive PII of third parties. The longer this data remains in the VMs the greater the risk of data

leakage. It is also highly burdensome for Microsoft to maintain the VMs and shared folders. As previously noted, this log production is something that has never been done before, and Microsoft has built a bespoke system to handle it. There are only a handful of employees who are able to maintain and keep this system operational. Experience to date suggests that Plaintiffs' needs for this data result in repeated requests for IT support from the Plaintiffs whenever technical issues arise. Against these important burdens sits a complete lack of articulation for why Plaintiffs need access past expert discovery, especially given that the trial in this matter may be many months or years away. To be clear, Microsoft does not object to restoring access to this data after summary judgment phase is over and the Parties can discuss the particular needs for this data at that point.

**"New" Copilot Document Requests (§ III.a.i):** Plaintiffs' single sentence request for "data metrics" that they characterize as directed to "discrete documents and data that Microsoft maintains" understates and oversimplifies what they seek. Plaintiffs sought eight different types of information two business days before briefing, including conversation evaluation source code and nonexistent reports that would require custom scripts to create. Nonetheless, Microsoft quickly provided one of the documents and is investigating the burden required to produce the information in the seven remaining requests. The parties should confer regarding the proportionality of the specific requests after Microsoft has had an opportunity to complete its investigation.

Plaintiffs' request for New Copilot display and grounding agreements is belated and unduly burdensome. Plaintiffs have been aware of these agreements for over a year. Following Judge Stein's Order, this Court multiple times required the parties to confer on the limited scope of New Copilot discovery. ECF 715 at 4; ECF 751 at 1.  Not until February 23 did Plaintiffs first request Microsoft produce these agreements. Plaintiffs also ignore the burden on Microsoft. Microsoft does not maintain a repository specific to these agreements and would need first to investigate what responsive agreements exist. Microsoft then would have to provide the requisite notice to third parties and, at least in some cases, obtain written consent from them before production. The burden on Microsoft to produce these documents at this late stage outweighs the relevance, and any prejudice is the result of Plaintiffs' delay or failure to prioritize these documents.

**Copilot Search Document Requests (§ III.a.ii.):** The Court should deny Plaintiffs' request for documents related to Copilot Search. As Microsoft has previously explained Plaintiffs' demand directly contravenes the Court's repeated refusal to expand the scope of these cases. *See* ECF 1117. Microsoft did not launch Copilot Search until April 2025—well after the operative complaints were filed. Ex. A at 21:21-22:7. Plaintiffs' request is therefore categorically barred by the Court's orders. Moreover, Plaintiffs' request for "documents sufficient to show the extent to which people are using the Copilot Search chatbot . . . to access news content" is vague and grossly overbroad. It provides no meaningful parameters (*e.g.,* time, data source, or defined metrics), leaving Microsoft to guess what Plaintiffs are even seeking. And as Jordi Ribas, Microsoft's Head of Search, testified in his deposition, the Copilot Search and Bing Chat teams had little overlap. *Id.* at 23:1-6 ("most people had not been in Bing Chat"), 23:10-16 (testifying that the Copilot Search "product was quite different" from Bing Chat). Satisfying Plaintiffs' demand would necessitate effectively re-opening discovery: Microsoft would have to identify and interview new custodians, collect their documents, run new keyword searches, and conduct a full, labor- and time-intensive responsiveness and privilege review. The Court has already made clear that such an extensive undertaking is not "in the spirit of a go-get document" and is plainly unwarranted after fact discovery has closed. 1/15/2026 Hr'g Tr. at 208:3–5.

**Additional Implementations of GPT-4o Document Requests (§ III.a.iii.):** The Court should also deny Plaintiffs' requests concerning additional implementations of GPT4o. First, Plaintiffs had the opportunity to file a supplemental brief on this issue and did not, and if the request now is meant to be that supplemental brief, it does not address anything the Court said should be explained. ECF 1279 at 3. Second, Plaintiffs' claim that they seek only "minimal discovery," but as Microsoft has repeatedly explained, any discovery into these products would be exceedingly burdensome. *E.g.*, ECF 856 at 4-5; ECF 1122 at 3. These implementations sit on entirely separate product stacks and code bases, and Microsoft cannot respond to Plaintiffs' demands without undertaking a substantial investigation into each product's capabilities and use cases. Courts routinely reject such attempts to force discovery into unrelated product lines. *See Statler v. Dell, Inc.*, 2011 WL 13312042, at *2 (E.D.N.Y. May 11, 2011) (finding that the burden and expense of producing documents about other product lines outweighed any potential benefit). Microsoft offered to serve a supplemental interrogatory response to address the identified products contingent on Plaintiffs' agreement this would resolve all discovery into the 4o implementations. Plaintiffs did not respond. Ex. D (M&C email) & Ex. E (NYT Rog 8).

**Microsoft Financial Data (§ III.b.):** The parties' dispute regarding M365 financials has been fully briefed and is pending before the Court. *See* ECF 1310; ECF 1318. Microsoft has responded to Plaintiffs' requests following the deposition of Katie Griffith.

**Request for Dr. E Glen Weyl Deposition (§ IV.a.i.):** Plaintiffs' request for more depositions is not based on need for relevant, non-cumulative information, but instead relies on the premise that they have additional time remaining and they are "entitled to use their deposition hours as [they] see fit." Under this theory, they could literally depose whomever and whenever, regardless of timing or the Court-ordered discovery cutoff, without any showing of relevance or need, simply because they have time to burn until they run out of time under the protocol. That is not the law.

Plaintiffs' request to depose Dr. Glen Weyl should be denied because his testimony is duplicative of existing testimony of Microsoft witnesses. Plaintiffs' fourth factor relevance hook rests on their claim that Dr. Weyl has knowledge about Microsoft's approach to paying for training or grounding data. If this truly is testimony that Plaintiffs seek, they will not get it from Dr. Weyl. Dr. Weyl is the Research Lead of Microsoft Research's Plural Technology Collaboratory working as a political economist and social technologist. He is not and has not been involved in Microsoft's acquisition and licensing of content for use in LLM training or products. Plaintiffs have already taken more than 10 hours of 30(b)(6) and 30(b)(1) testimony from the individuals involved in the negotiation and execution of Microsoft's data access agreements. Microsoft suspects that Plaintiffs have a different motive for seeking to depose Dr. Weyl. As a researcher and theorist, Dr. Weyl has published his ideas on "data dignity" and "data as labor." Plaintiffs have already spent two full deposition days exploring these ideas with two other Microsoft researchers, Jaron Lanier and Dr. Brent Hecht, trying very hard to turn these personal academic views about compensation for content owners into an admission by Microsoft that a fourth factor market for training data already exists. As Plaintiffs well know, Dr. Weyl is a close collaborator of Mr. Lanier's and many of the works that were discussed in Mr. Lanier's deposition were co-authored with Dr. Weyl. There is no need for another day of this with Dr. Weyl. Even if his personal academic views had any relevance to this case, and they do not, his deposition would reveal nothing more.

**Request for William Buchwalter Deposition (§ IV.a.ii.):** Plaintiffs' request to depose Mr. Buchwalter about his " is based on a skewed premise. ECF 1383 at 6. He has no such knowledge. Plaintiffs rely on a single document in which Mr. Buchwalter discusses a dataset that made publicly available, not from any inside knowledge. ECF 1383-17. Plaintiffs also point to Xia Song's testimony on that document, but there, Plaintiffs' counsel merely read the text, and the witness confirmed, "I see the sentence." ECF 1383-29 96:10-22. Plaintiffs inaccurately paraphrase his testimony that he did not "know for sure if William was there," *id.* 103:1-7, as him "explaining that Buchwalter may have had access to ,'" ECF 1383 at 6. Microsoft has identified documents confirming the people on the team that . *See* Ex B. None involve Mr. Buchwalter.

**Request for Kevin Scott Deposition (§ IV.a.iii):** Plaintiffs mischaracterize the Scott deposition circumstances. Microsoft's counsel informed Plaintiffs immediately upon learning that Mr. Scott was suffering from a serious medical condition that could constrain his ability to be deposed in the usual setting. In the same correspondence, Microsoft proposed specific accommodations that would permit Mr. Scott's deposition to go forward as scheduled. Plaintiffs chose to cancel the deposition without engaging with Microsoft regarding medical accommodations. Microsoft has agreed to consider stipulations regarding his documents and is simply waiting for a list of those documents from Plaintiffs. If he is a trial witness, he will be offered for deposition at a later time.

**Follow Up From Mustafa Suleyman Deposition (§ IV.e.iii.):** Mr. Suleyman is CEO of Microsoft AI. He joined Microsoft in March 2024 from Inflection AI, where he was its co-founder and CEO. Since his departure, Inflection has continued to operate as an AI company independent of Microsoft or Mr. Suleyman. The only questions that Mr. Suleyman was instructed not to answer would have required him to give substantive testimony about Inflection's model training activities that occurred while he was employed by Inflection, not Microsoft. *See* ECF 138-20 (*E.g.*, " "). As it is clear from these questions, they sought Mr. Suleyman's testimony in his capacity as the CEO of Inflection, not as a Microsoft employee. This was plainly improper as it implicated Inflection's rights without providing Inflection notice and an opportunity to defend itself. Allowing Mr. Suleyman—whose testimony could bind Inflection—to answer these questions would result in precisely the type of prejudice courts seek to avoid when a non-party is absent and unrepresented. Microsoft confirmed on the record that Plaintiffs did not provide any notice to Inflection of this line of questioning. Since Inflection is a third-party, Plaintiffs were required to issue a Rule 45 subpoena to obtain testimony from Inflection. Plaintiffs' questions to Mr. Suleyman were a bare attempt to evade this process and obtain testimony from a non-party under the ruse of a deposition noticed as a party employee deposition.[1]

---

[1] This is not the only time Plaintiffs have attempted this approach in questioning witnesses. Plaintiffs also asked Mr. Suleyman about The Economist's AI-related activities in his capacity as a member of The Economist's board. Former

Plaintiffs do not even attempt to explain these obvious problems with their questioning. Instead, they make a bold claim that Mr. Suleyman is "likely the only witness who can answer questions about the contents of the 2022-2023 Bing Index." ECF 1383 at 7. Setting aside the improper nature of these questions relating to Mr. Suleyman's work while he was at Inflection outside the presence of Inflection's counsel, there is certainly no basis to suggest that Mr. Suleyman, the former Inflection CEO, would have any information regarding the specific contents of the constantly churning, dynamic Bing Index. In any event, Microsoft has already provided fulsome discovery on this issue. Plaintiffs have spent multiple days questioning Microsoft 30(b)(6) and 30(b)(1) witnesses, including Padma Gaggara (twice), Fabrice Canel, Mikhail Parakhin, Elbio Abib, and others about the contents of the Bing Index, and Microsoft has made the present contents of the Bing Index available for inspection. There is no basis to re-open Mr. Suleyman's deposition to conduct corporate discovery into activities of non-party Inflection. *See Baker v. Saint-Gobain Performance Plastics Corp.*, 2024 WL 4523805, at *3-5 (N.D.N.Y. Mar. 21, 2024) (denying additional testimony as unreasonably cumulative where the requesting party had ample opportunity to explore the same topics through prior witnesses).

**Microsoft's Redacted Documents (§ V.f.):** Microsoft has shown in its log and during an extensive conferral that its redactions are protected by the attorney-client privilege because they are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice. ECF 618 at 2; *see* Ex. C (last column). By contrast, Plaintiffs have not met their burden of making a "minimal showing that [*in camera*] review is likely to support [their] position." *Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *6 (S.D.N.Y. May 23, 2016). Notably, Plaintiffs do not even provide specific challenges to 4 of the 7 documents, and Plaintiffs' claims regarding the other 3 documents wholly ignore the information provided during the conferral. *See* Ex. C. Indeed, Plaintiffs wrongly assert these documents reflect "vague legal issues" and not legal advice and mischaracterize its three examples as only strategy or policy discussion documents. *See Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018) ("policy documents can amount to legal advice protected by the attorney-client privilege"). To place Plaintiffs' latest request in context, they have sought *in camera* review for 11 of the over 12,000 entries on Microsoft's log. Microsoft has cooperated at every turn. Plaintiffs have failed to reciprocate. Plaintiffs have had the 7 challenged documents for months, and for some, since as early as July 2025. Yet, Plaintiffs waited until 12:30 am ET on February 27, 2026—two business days before this briefing was due—to request a meet and confer. During the March 3, 2026 conferral and in an attempt to avoid a dispute, Microsoft agreed to narrow some of its redactions and less than 3 hours later and 8 hours before they filed their motion, Microsoft sent PDFs with reduced redactions. Microsoft requested that Plaintiffs attach these revised versions to any filing challenging the redactions so the Court could assess its current privilege assertions. Plaintiffs chose not to and instead included as exhibits 28 and 30 the originally-produced versions. When Microsoft requested that Plaintiffs file corrected exhibits to reflect the revised versions, Plaintiffs refused.

---

Microsoft employees have been asked about their AI-related work with their current employers, and witnesses have been instructed not to answer these questions on the same basis.

-6-

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| */s/  Annette L. Hurst*<br>Annette L. Hurst | */s/  Jared B. Briant*<br>Jared B. Briant |

*Counsel for Defendant Microsoft Corporation*